SPERRY & HUTCHINSON CO. v. TEMPLE.

(Circuit Court, D. Massachusetts, May 16, 1905. Final Decree, June 24, 1905.)

No. 2,019.

1. TRADING STAMPS—IMPROPER USE—NOTICE.

Where defendant had been in complainant's employment long enough to know that the necessities of complainant's business in selling and redeeming trading stamps required that such stamps should not be dealt in by the public generally, he was not an innocent purchaser without notice in purchasing issued stamps for resale.

2. SAME—PUBLIC POLICY.

The business of issuing trading stamps to merchants to be given to purchasers of small bills for cash, redeemable in articles of merchandise, etc., when honestly conducted, is not contrary to public policy.

3. SAME—INJUNCTION.

Where defendant purchased complainant's trading stamps, among others, for resale, and such purchases seriously interfered with complainant's business in issuing such stamps for redemption in articles of merchandise, etc., complainant was entitled to an injunction prohibiting defendant from advertising that he would purchase complainant's stamps, and from selling stamps so purchased as articles of merchandise.

In Equity.

Adler & Hall and W. Benton Crisp, for complainant.

John A. Coulthurst and John F. Hurley, for defendant.

PUTNAM, Circuit Judge (orally). This case has been submitted on bill, answer, replication, and proofs, and fully argued by counsel, and the court sees no reason why judgment should be reserved. The court need not inquire whether the complainant was the originator of the general system of dealing in trading stamps described in the bill, but it puts out the stamps to merchants under special contracts with them. The nature of the business requires that there should be a certain monopoly. If the stamps were on the market generally, thus opening the business extensively, no merchant would have any inducement to deal with the complainant. Therefore, by the very nature of the business, the stamps are not intended to be dealt with by the public generally, and are not transferable in the general and ordinary sense of the word. From the inevitable and necessary course of business there must be certain restrictions on dealings in the stamps. This case does not involve innocent parties who purchased stamps in ignorance of the necessities of the course of business. Some of the stamps are said to have had imprinted on them a notice, or words which in substance were a notice, with regard to the necessary course of business, showing that the stamps were not to be dealt with generally, or that they were not generally transferable. While the fact that the stamps dealt in by the respondent contained no such notice would, perhaps, bar the complainant as to a purchaser obtaining them innocently, yet this respondent was in the employment of the complainant long enough to know what the necessities of the course of business were. This was sufficient knowledge, regardless of the question whether he knew that there were specific limitations in

the books which were given out by the complainant as an element in the use of the stamps. Therefore he does not stand altogether in the position of an innocent party.

Objections have been made that the system of dealing in trading stamps is contrary to public policy, and that certain representations made that the stamps are without cost to the purchaser are untrue and inequitable, and therefore bar the complainant from coming into the chancery court. These statements were, however, substantially true, provided the business was carried on honestly. The trading stamp business is essentially legitimate, and, so far as the court can discover, it is the only way in which the small purchaser practically obtains a discount for immediate payment, whether that immediate payment is in cash or anything else. Honestly conducted, it leads to an allowance to one who purchases for cash, or the equivalent thereof; and statements of the character referred to are not in their proper sense untrue. Undoubtedly, the way in which the business is done, requiring the stamps to be redeemed in articles of merchandise, mainly articles of furniture, leads to certain impressions on the part of the public which induce the public to take the trading stamps when otherwise they would not take them. That, however, is not distinguishable from many usual methods adopted by merchants for inducing custom, and it is one of those methods of so inducing custom which courts cannot interfere with, unless they are disposed to protect the public beyond what the law permits. So far as this case is concerned, the court is unable to perceive from any proofs in the record, or from any suggestion, that the business of the complainant is not perfectly legitimate, honestly carried on, and, therefore, a business which the courts ought to protect, and one which the Legislature has no right to obstruct.

As already said, the stamps issued by the complainant go into the hands of merchants who deal directly with it; and, unless protected in some way against unauthorized competition arising from the stamps being resold to the public by other merchants, the whole system would break down and the business of the complainant would be destroyed. Therefore, so far as necessary, and so far as within the reason of the law, the court ought to protect the complainant in carrying out its system of issuing stamps. A question arose in the mind of the court whether the complainant could not protect itself by refusing to redeem stamps which had got into the channels of trade otherwise than in accordance with its fundamental method of transacting its business. The court perceives, however, that it would be impracticable for the complainant to discriminate between stamps properly issued by the merchants with whom it deals, and other stamps, which otherwise come upon the market. Perhaps, as suggested by the respondent's counsel, that might be done with a great deal of labor; but it would require a system of consecutively numbered stamps, combined with cumbersome accounts, which might be too expensive and too laborious to afford the complainant a practical remedy. If the complainant had any method by which it could reasonably, and without too much labor

137 F.—63

and too much expense, protect itself by rejecting stamps which come improperly on the market, an equity court could not interfere; but under the circumstances the court is of the opinion that it ought to give the complainant aid, so far, at least, as issuing an injunction is concerned. The circumstances of this particular case would not justify the court in directing an accounting, because the amount involved is too small, because the question of profits which the complainant would be entitled to recover runs into too narrow channels of a doubtful and speculative character, and because, for the reasons which will be explained, this respondent ought not to be charged with anything in the nature of profits or costs.

It appears that the respondent advertised that he would purchase stamps of all colors. This included, of course, the complainant's stamps. There is no question that he did purchase from any one who saw fit to bring to him stamps, which included the complainant's stamps, and that he sold them on the market, so that the purchaser of them might use them as a thing of value, in such a manner as, if extended indefinitely, would break down the complainant's system and method of business, as the court has already explained. In other words, the respondent assumed to deal generally in trading stamps, including these stamps, buying and selling them as articles of merchandise. This court has no power to restrain him from purchasing all the stamps he sees fit to purchase. It has no power to prevent him from selling stamps to persons who desire to make collections as mere matters of curiosity. It has no power to restrain him from selling them as waste paper, provided they are so canceled or in any way broken up or disfigured that they can be used only as such. It has power to restrain him from selling them as articles of merchandise, and from advertising generally that he will purchase specifically them, or stamps which would include them, as articles of merchandise. It should go to that extent, and protect the complainant's business so far as an injunction of that character would protect it.

The complainant's bill describes its stamps as issued in connection with the words: "Caution: This pad is not transferable." The complainant admits that this was done only to a limited extent, and, so far as this case is concerned, we must hold that there was no caution to the public plainly printed on the face of the stamps, and that they were not salable except in accordance with the course of business of the complainant. Therefore, although on the one side we must hold the respondent liable to an injunction, because he was acquainted with the course of business of the complainant generally, and knew enough of it to understand that the stamps ought not to go on the open market, yet the complainant has not put itself in a position where it is positively entitled to costs against him, or to recover profits. Therefore the decree will be limited to an injunction, and that injunction will be limited as already explained. It will direct that an injunction go against the respondent, prohibiting him, and those representing him, from putting out advertisements that he or they will purchase the complainant's particular stamps, or advertisements so broad as to include them. It will also

restrain him and those representing him from selling the complainant's stamps as articles of merchandise. It cannot provide that he shall not purchase, so far as he sees fit to purchase, because that is beyond the power of the court to enjoin.

The court will observe that it would undoubtedly follow Judge Brown in Sperry & Hutchinson Co. v. Mechanics' Clothing Co., 135 Fed. 833, if the facts were the same; but they are so far different that we are compelled to go deeper than did the Circuit Court for the District of Rhode Island in that case.

Ordered: The complainant will file a draft decree in accordance with the opinion passed down this day, under rule 21, within one week from to-day. The respondent may file corrections thereof, under rule 21, within one week thereafter.

### Final Decree.

This cause came on to be heard at the February term on bill, answer, replication, and proofs, and was argued by counsel for the respective parties; and, on consideration thereof,

It is now ordered, adjudged, and decreed that the defendant, Onsville L. Temple, his agents, servants, attorneys, and representatives, be, and each of them is, hereby restrained and enjoined from putting out advertisements that he or they will purchase the trading stamps of complainant, or advertisements so broad as to include the trading stamps of the complainant.

And it is further ordered, adjudged, and decreed that the defendant, Onsville L. Temple, his agents, servants, attorneys, and representatives, be, and each of them is, hereby restrained and enjoined from selling the trading stamps of the complainant as articles of merchandise.

And the court reserves the cause for further directions, in the event either party from time to time applies for modifications of this decree.