COOKE v. SOUTHWEST PETROLEUM CO.

No. 27361.   Sept. 22, 1936.

Shirk, Danner & Earnheart, Charles Swindall, and J. H. Jarman, for plaintiff in error.

Howard B. Hopps, for defendant in error.

FOGG, Special J. This is an action filed July 10, 1936, for injunction (tried July 11, 1936, before answer was filed) in which the plaintiff alleges, in substance, that he is the owner of the west 52½ feet of lot 10, in block 1, in Howe's Capitol addition to the city of Oklahoma City, Okla., and has erected thereon valuable improvements consisting of an apartment house and garages of the value of $18,000, and that they were erected in compliance with the plat restrictions and covenants of Howe's Capitol addition; that defendant is attempting to, and will, unless enjoined, drill an oil and gas well on block 18 in the addition, and will dig cellars, slush pits, erect three or more steam boilers, smoke stacks, and place engines, drilling machinery and equipment, including storage tanks, dig ditches and lay pipe lines, etc., all of which will destroy the property for residential purposes and uses for which the same was laid out in the plat and restricted.

July 22, 1916, the Howe Capitol Realty Company filed a plat platting certain land as an addition to Oklahoma City, and designated it as Howe's Capitol addition to Oklahoma City. This platted ten blocks which were numbered 2, 3, 6, 7, 10, 11, 20, 21, 22, and 23.

In this plat it was provided that persons thereafter becoming owners of any tract or parcel platted should take and hold the same subject to certain conditions and restrictions.

January 18, 1919, a part of the same tract of land owned by the Howe Capitol Realty Company adjoining on the east the tract platted in 1916 was platted by the same company as certain numbered blocks. This plat was styled and designated as "Blocks 1, 4, 5, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 24, 25, 26, and Second Amended Plat of Block 23, Howe's Capitol Addition to Oklahoma City, Oklahoma."

Plaintiff states in brief:

"The purpose of offering the 1916 plat (C.-M. 24) in conjunction with the 1919 plat (C.-M. 38) is to show that 'the Howe Capitol Realty Company' owned the land out of which it carved the 1916 addition as well as the land out of which it carved the 1919 addition, and that as such owner the dedicator set up a general plan and scheme that the areas described in both plats and dedications should be used for residential purposes to the exclusion of all business activity."

Plaintiff calls attention to the circumstances that when the two plats were placed side by side, it is readily to be seen that the blocks were so numbered in the 1916 plat that when the 1919 plat was filed the numbering of the blocks ran in a regular way from 1 to 26, inclusive, and that the second plat bore a designation of name identical with the first, "Howe's Capitol Addition to Oklahoma City."

A tract or parcel of land was platted in 1916. The plat contained certain restrictive covenants. Another tract of land was platted in 1919 with different covenants and restrictions. The plat of 1919 is not an amended plat, and is not even denominated an amended plat. Included in the 1919 plat is a paragraph amending the platting of block 23, and states that it is "Second Amended Plat of Block 23." There is no first amended plat of block 23 shown in the record. The only platting of block 23 is that shown in the plat of 1916. The designated "Second Amended Plat of Block 23" is an independent part of the plat of 1919. The 1919 plat does not in any manner refer to the plat of 1916.

This case was tried in the district court on theory agreed upon by the parties and largely upon stipulations and agreements concerning the evidence. When the case was called for trial, the respective counsel made announcements as follows:

"Mr. Hopps: We understand we have waived all pleadings and the matter was to determine the construction of the plat restrictions and if the court held that if it applied, then we would file an answer and proceed to trial of the question as to whether or not they violated their restrictions or to determine the plat restrictions. Mr.

Shirk: Counsel is correct. I perhaps should amplify my present statement and incorporate that by adding which counsel for defendant has said that is the only question that is to be presented, considered and determined by your honor that is, are there plat restrictions which prohibits drilling of an oil and gas well in block 18, Howe's Capitol addition, and if the court holds there are such prohibitive plat covenants then it would, the defendant then is to have time to plead and place the issue that will be later submitted to and determined by the court as to whether or not those restrictions are, or have been violated and whether they have been or are waived they have or have not been abandoned and all other questions of like or similar nature that might be raised.

"The petition is quite large, perhaps voluminous, but counsel there has stated that the petition is sufficient to raise all questions that are being presented to and decided by the court. * * * And hence this suit was brought in order that there be a judicial determination of whether or not there are plat restrictions as inhibition against the drilling of the well. The other questions are shelved for the time being. If the court should hold there are plat restrictions, then those other questions will be taken up as stated by the respective counsel.

"The plaintiff desires to offer in evidence —"Mr. Hopps: I don't believe there is any further statement to make at this time. I think Mr. Shirk has very properly and very well stated the situation."

The 1916 and 1919 plats were offered and received in evidence. The evidence is that each of the deeds from the plattor and dedicator, Howe's Capitol Realty Company, to its immediate grantees in block 18 contained recitation as follows:

"As shown by and subject to all restrictions as stipulated in the dedication of the recorded plat thereof and amended plats thereof, if any such there be."

The above recitation in each of the deeds referred to states that the property is taken subject to restrictions as stipulated in the dedication of the recorded "plat" and does not refer to plats. There were two separate and distinct plats.

By stipulation of the parties and by the record in this case there is presented to this court the sole question of determining whether or not the restrictive covenants of the 1919 plat entitle plaintiff to injunctive relief.

The restrictive covenants of the 1919 plat are as follows:

"Restrictions.

"Any person or persons hereinafter becoming the owners of any tract or parcels hereby platted, shall take and hold the same subject to the following restrictions to wit:

"First: In the rear of all lots in Block One (1), Four (4) and Five (5), a strip of land five (5) feet wide is reserved for the free use of the city and public service companies for the installation of sewers, gas mains, electric and telephone wires, etc., and no buildings or other obstructions shall be placed thereon to the interference of the uninterrupted installation or maintenance of these utilities. In the South Half of Block Five (5), the building line shall be 37 feet; in the North Half of Block Eight (8), thirty-eight (38) feet; in the South Half of Block Eight (8), forty (40) feet; and in all other blocks in this Addition, thirty (30) feet from the front lot or Block line and parallel with the streets on which the lots face, as shown on the plat and no building or any part of any portion thereof shall at any time be erected or placed upon the space between the building line and the street, or shall any projection of any such building of whatsoever character be permitted to extend into or encroach upon said space, except that the floor of the porch, in front of the main door or entrance may extend over the building line not to exceed eight (8) feet.

"Second: The greatest extension of foundation walls shall not be nearer than five (5) feet to a lot line on any street running North and South.

"Third: All buildings in the Addition shall be of modern construction and in keeping with the surroundings. No residence North of the alley in Block Nine (9) shall cost less than Four Thousand ($4,000) Dollars. No residence in the South half of Block Nine (9) and in the North half of Block Twelve (12) shall cost less than Three Thousand Five Hundred ($3,500) Dollars. No residence in any part of the Addition shall cost less than Two Thousand Five Hundred ($2,500) Dollars. The company's agent, H. G. Eastman, shall have power, when making a sale, to increase the restrictions as to costs and to determine type of houses on any building site.

"Fourth: Only one residence shall be erected on any building site in Block One (1), Four (4), Five (5), Eight (8), Nine (9), Twelve (12) or Nineteen (19) and all owners are required to face their dwellings South on lots facing South and North on Lots facing North, but this does not preclude side entrances when desired, and no building in Block One (1), Four (4), Five (5), Eight (8), Nine (9), Twelve (12) or Nineteen (19) shall ever be used or occupied except for that of residence exclusively and

no intoxicating liquors shall ever be manufactured or sold, nor shall any house of prostitution be permitted in the Addition.

"Fifth: No person of African descent shall ever own any part or parcel of this entire addition, nor shall any such person live in the addition, except when in·the employ as a servant and living on the premises of the house-holder in this addition; nor shall any owner or tenant let or sublet to any such person.

"Sixth: All telephone service lines and all electric light distributing lines and all gas distributing mains shall be placed in alleys or in reserved strips running East and West.

"Seventh: No bill boards or other advertising devices shall be erected or placed upon any part of said Addition, except temporary signs of the grantors, advertising the Addition."

This is an action in equity, and the conclusion reached by the court in such an action must depend upon the peculiar circumstances of each case.

The Supreme Court of Oregon, in passing upon a case involving question of violating building restrictions, said:

"Whether injunctive relef is to be granted is a matter within the sound legal discretion of the chancellor, to be determined in the light of all the facts and circumstances. Many authorities could be cited wherein equity has refused to intervene, and, perhaps, even more where it has assumed jurisdiction. Each case ·must be considered in the light of its own particular facts." Ludgate v. Somerville, 121 Ore. 643, 256 P. 1043, 54 A. L. R. 837.

On appeal the case must be presented on the same theory on which it was presented to the trial court, and a party litigant will not be allowed, after lodging his appeal in this court, to change the theory of his case and present other and different questions than those presented in the trial court. Goodwin v. Shi, 171 Okla. 8, 41 P. (2d) 816; Security National Bank of Tulsa v. Cain, 126 Okla. 202, 259 P. 572; Baldwin & Baker v. Saunders-Gibson Co., 148 Okla. 290, 298 P. 600; Milliken v. Smith, 120 Okla. 211, 251 P. 84; Westlake v. Cooper, 69 Okla. 212, 171 P. 859, L. R. A. 1918D, 522.

In a case of purely equitable cognizance, the findings and judgment of the trial court will not be disturbed on appeal unless the same are clearly against the weight of the evidence. Hubbard v. Stotts, 171 Okla. 205, 42 P. (2d) 489, and other cases cited therein.

There is much judicial writing on the subject of restrictive covenants, and the cases abound in fine and subtle distinctions, which have been invented either to overcome the rigor of the common law in courts of equitable cognizance or to adapt the settled forms of relief to fit special cases, and there are many decisions upon this branch of the law which appear to be in hopeless conflict with each other, but which are easily reconcilable when their peculiar circumstances are understood.

We have examined all of the Oklahoma cases in which the question of restrictive covenants in plats and deeds referring to plats are involved, and have examined cases cited in briefs of the respective parties. There is nothing in the 1919 plat expressly prohibiting the drilling of the oil well in question in block 18 of the addition referred to. The only issue presented is interpretation of the language used in the plat of 1919. Having carefully considered the entire record, we are of the opinion that plaintiff has not shown sufficient reasons for granting the injunctive relief prayed for. Judgment of the lower court is affirmed.

RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. OSBORN, V. C. J., concurs specially. McNEILL, C. J., dissents. WELCH, J., absent.

OSBORN, V. C. J. (specially concurring). I concur in the majority opinion, but with great reluctance.

It is manifest that the agreement of counsel, resting ultimate rights of the parties on the existence, or nonexistence of restrictions in the dedicatory plat of the addition involved, was improvidently made. The fitness of platted property for residential use may, under certain circumstances, be wholly destroyed by the drilling of oil and gas wells thereon. That oil and gas are dangerous substances when produced or stored in commercial quantities is well recognized.

The march of derricks and oil and gas wells has invaded valuable residential areas of our Capital City; the public lands used as a building site for our public capitol buildings and for a place of residence of the Chief Executive of this state have been perverted from the intended public use. Not only has private residential and business property been subjected to the hidden dangers, but the public playgrounds of our school children have been desecrated by drilling wells. A producing oil or gas well is a source of grave danger to persons and property in its near vicinity. An uncontrolled well, as everyone must know, is a

462

potential danger of sinister possible consequences. Who can enjoy a residential use of property when death and danger are lurking near? What terrible holocaust to our school children, whose presence is enforced in the dangerous territory, will be necessary to arouse the citizens into a public duty to protect their homes and public property against such shortsighted cupidity?

I have heretofore pointed out, in the cases of Keaton v. Brown, 171 Okla. 38, 45 P. (2d) 109, and Hubbard v. Oklahoma City, 177 Okla. 263, 58 P. (2d) 547, that no one has the right to so use his property as to result in serious injury or damage to his neighbor. But under the record in this case, by agreement, the parties have precluded relief on this theory.

I cannot refrain, however, from pointing out again that courts may grant relief where the evidence warrants the conclusion that an improper use is being made of property. Such relief is dependent, not upon implied plat restrictions, but upon the inherent restriction against the improper use of property.

McNEILL, C. J. (dissenting). It seems to be admitted in this case that most of the area covered by Howe's Capitol addition, as described by the plat filed January 19, 1919, as well as most of the area described as Howe's Capitol addition filed in 1916, has been improved with substantial buildings used for residential purposes and the same is true with respect to the area to the south, to the west, to the east and the north.

In brief, as I view the issues in this case, these two plats, coming from a common dedicator, must be read in connection with each other, and, if they are, it is clear to me that there was designed a general plan and scheme to have these areas devoted to residential purposes. The number and arrangements of the blocks indicate such a purpose. This may be seen from the plats, photostatic copies being as follows:

# HOWE S CAPITOL ADDITION
## TO
## OKLAHOMA CITY, OKLAHOMA
PART OF S E.¼ SEC 27, TP.12 N., R.3 W.      SCALE 1"=100'      FILED JAN 1919

The 1916 plat was dedicated for residential purposes, and although the 1919 plat does not technically mention the restrictions as being imposed upon block 18, yet it seems apparent that this block must follow within reasonable bounds the restrictions imposed upon the blocks in said platted additions. The 1919 plat dedicates all streets and alleys, outside of certain exceptions, "upon the distinct understanding and condition that said streets and alleys shall be used by the public for the ordinary purposes of travel, and other uses to which streets are ordinarily put."

Trucking of pipes, boilers, and oil and gas drilling paraphernalia are not within such uses in residential districts. Drilling for oil and gas in residential areas cannot be harmonious with residential purposes.

For these reasons, I dissent.