### THOMAS et al. v. BELCHER et al.

No. 28544.    March 7, 1939.

James W. Rodgers and C. M. Gordon, for plaintiff in error.

C. H. Baskin, for defendants in error.

GIBSON, J. This is an action by a wholesaler against a retailer and his sureties to recover the purchase price of certain commodities delivered pursuant to a written contract of purchase and an alleged guaranty.

As a defense it was alleged, first, that the contract between plaintiff and the principal defendant, Belcher, was in restraint of trade and void under the provisions of the Sherman Antitrust Laws (15 U. S. C. A. sec. 1, et seq.) and the statutes of this state (sec. 12790, O. S. 1931, et seq., 79 Okla. Stat. Ann. sec. 1, et seq.; sec. 9492, O. S. 1931, 15 Okla. Stat. Ann. sec. 217). In this connection it is asserted that the contract between plaintiff and the defendant Belcher was later supplemented by an oral agreement between said parties whereby Belcher was confined to a definite territory as retailer of the goods aforesaid, and was required to sell at a price fixed by the plaintiff.

The cause was tried to the court, and judgment for defendants was based upon a general finding.

Assuming that the alleged oral agreement confined Belcher's operations to a definite territory, that circumstance would not invalidate a contract of this character as one in restraint of trade. Defendants offer no authorities to support their argument in this behalf. If it can be said that the arrangement hints of monopoly, it still is not that character of monopoly that is said to be in unreasonable restraint of commerce. A motor car dealer's contract limiting him to a definite and exclusive territory does not restrain trade or competition in violation of the federal antitrust laws, Cole Motor Car Co. v. Hurst, 228 Fed. (C. C. A.) 280, and we therefore see no reason why a wholesaler or distributor of ordinary commodities may not so restrict his retailers. The illegality of contracts in restraint of commerce is a product of public policy. If such contracts are not contrary to public policy, they violate neither the federal nor the state antitrust laws. Until a commercial arrangement between parties reaches a stage where commodities needful to the public welfare are restricted commercially to the point where the public is exposed to the evils of monopoly, such arrangement is not in restraint of trade within the meaning of the antitrust laws.

The merchandise in the instant case was probably of a standard class and in general public use, but it was sold on a competitive market with other similar products in the particular territory. To restrict the sale of plaintiff's merchandise to one retailer therein holds no suggestion of monopoly.

Assuming that the alleged subsequent agreement between plaintiff and the defendant Belcher actually permitted plaintiff to fix the resale prices, that circumstance alone is insufficient to constitute a monopolistic scheme in restraint of commerce under the federal or state antitrust laws, and therefore not sufficient to invalidate the alleged agreement or the original contract. Though this statement may be contrary to our earlier decisions, it is in accord with our most recent pronouncement on the subject. Furst v. Lucas, 177 Okla. 513, 61 P.2d 214. In that case, referring to our previous decisions, we said:

"The declarations of law as contained in the decisions of this court previously mentioned rested upon consideration of the then existing expressions of the federal courts upon the subject. There have been, however, some important treatments of this subject by the United States Supreme Court which have not been taken into consideration in our previous opinions. * * *"

The cases there referred to were Stewart v. W. T. Rawleigh Medical Co., 58 Okla. 344, 159 P. 1187; Brooks v. J. R. Watkins Medical Co., 81 Okla. 82, 196 P. 956; Hunt v. W. T. Rawleigh Medical Co., 71 Okla. 193, 176 P. 410; Gordon v. W. T. Rawleigh Co., 117 Okla. 235, 245 P. 825; Long v. Furst, 171 Okla. 489, 44 P.2d 74.

In Furst v. Lucas, above, we discussed the decisions of the Supreme Court of the United States as there cited, and concluded as follows:

"For the purpose of the case at bar the important feature of federal decisions upon the subject is the underlying principle of monopoly. It is to be observed that a single isolated transaction by which a wholesaler or manufacturer attempts to control the price of goods is not necessarily condemned by law. But if such a contract or agreement, express or implied, is a part of a general scheme which has a tendency towards monopoly, it comes within the condemnation of the legislation. * * *"

The discussion of the question is in that case full and comprehensive. It need not be further dealt with here, except to say that in the absence of a showing that the alleged price-fixing agreement was one of a number of like agreements in use between plaintiff and his retailers throughout plaintiff's trade territory, there is not sufficient evidence to warrant a finding that a monopoly existed or was intended in violation of the antitrust laws. A single transaction whereby a wholesaler attempts to control the resale price of goods is not condemned in law. We are not here discussing the legal effect upon the buyer's title arising from a stipulation between the seller and buyer of chattels fixing the resale price thereof. That question is not presented in the instant case; Belcher's title is not questioned.

The record discloses no evidence to warrant a conclusion that the alleged agreement was part of a general monopolistic scheme throughout plaintiff's trade territory.

For further defense it is charged by the guarantors that they were induced to sign the guaranty contract through the fraud and misrepresentation of the plaintiff's agents, in that they were led to believe that Belcher would sell for cash only, whereas he was later required by plaintiff to sell on credit. Defendants say that in the absence of that assurance they would not have signed.

The testimony of guarantors Neese and Eastep is to the effect that no representative of the plaintiff induced them to sign the contract under promises of any kind. Defendant Campbell testified, over plaintiff's objection, that some unnamed alleged agent of plaintiff promised him that Belcher would sell only for cash. The court later ordered this testimony stricken for the reason that no proper proof of agency had been offered. The court was correct in its order. Thus there was no evidence of inducement on the part of plaintiff, at least the briefs cite us to no such evidence, and we are unable to locate any in the record. Therefore this particular defense is not sustained by the proof.

Next, the defendant guarantors say they have been discharged from liability for the reason that Belcher was assigned a territory other than the one to which he was first assigned, all without their consent. It has been held that such a circumstance will discharge sureties from further liability. 28 C. J. 957, sec. 105; Furst v. Bury (S. D.) 249 N. W. 732; 89 A. L. R. 649. But here there was no proof that Belcher had been assigned a territory and then later re-assigned to another. One, or more, of the guarantors testified that he would not have signed the bond had he known that Belcher was to be sent to Okfuskee county instead of Hughes county, where the bond was signed. Our attention is called to no further evidence on this particular question. The defense fails for want of proof that Belcher was to be assigned, or was actually assigned first, to Hughes county. As to what formed the basis of the defendants' understanding in this regard, we are not informed.

As an additional defense the guarantors charge that the partnership of Furst & Thomas, of which the plaintiff is survivor, did not comply with section 11662, O. S. 1931, 54 Okla. Stat. Ann. sec. 81, by filing the information therein required with the clerk of the district court, and for that reason could not maintain this action. Section 11664, O. S. 1931, 54 Okla. Stat. Ann. sec. 83. In this connection it is charged that said partnership was transacting business here under a fictitious name. Furst & Thomas, a title including the names of the partners, is not considered a fictitious name. Patterson v. Byers, 17 Okla. 633, 89 P. 1114. See, also, Bolen v. Ligett, 49 Okla. 788, 154 P. 547. Defendants' argument that the partnership was doing business under a fictitious name because of the fact that it was engaged exclusively in selling McNees Sanitary Products is without merit.

There is not sufficient evidence to support the judgment of the trial court on any of the defenses interposed. It is therefore necessary to reverse the judgment in its entirety.

It appears that no judgment was rendered against defendant Belcher, though the court found against him. Instead, judgment was rendered in his favor. No doubt this was done through inadvertence, for attorneys for defendants concede that plaintiff was entitled to judgment against defendant Belcher.

The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and DANNER, JJ., concur.