William RANCE and Ruth V. Rance, Plaintiffs in Error,

v.

The SPERRY AND HUTCHINSON COMPANY, a corporation, Defendant in Error.

No. 40423.

Supreme Court of Oklahoma.

April 13, 1965.

Rehearing Denied June 22, 1965.

Certiorari Denied Dec. 6, 1965.
See 86 S.Ct. 395.

**862**

Cantrell, Douglass, Thompson & Wilson, by John H. Cantrell, Oklahoma City, for plaintiffs in error.

W. J. Holloway, G. M. Fuller, Fuller, Smith, Mosburg, Davis & Bowen, Oklahoma City, Casey, Lane & Mittendorf, John F. Joyce, New York City, Roger H. Lloyd, New York City, of counsel, for defendant in error.

IRWIN, Justice.

The Sperry and Hutchinson Company, referred to as plaintiff, is engaged in the trading stamp business and by written contract, it licenses the use of its S&H trading stamp service to certain retail merchants, referred to as licensees. The licensees offer and issue the stamps to their customers when the customers purchase merchandise at the licensees' places of business. The customers who receive the stamps will be referred to as collectors.

William Rance and Ruth V. Rance, d/b/a Trading Stamps Exchange, referred to as defendants, buy and sell S&H stamps, exchange S&H stamps for other brands of trading stamps, and exchange other brands of trading stamps for S&H stamps. Briefly stated, defendants conduct a business of "trafficking" in trading stamps.

Defendants are not licensees of plaintiff and plaintiff has not consented to defendants' "trafficking" in its stamps. Plaintiff commenced this proceeding to permanently enjoin defendants from "trafficking" in S&H stamps.

The trial court, in its journal entry of judgment, permanently enjoined defendants "from advertising or otherwise offering to buy, sell, trade or exchange", and "from buying, selling, trading or exchanging or dealing in any other way with S&H Green Stamps, either in person or through their agents, servants, employees or associates, or in any other manner".

The defendants have appealed from the order overruling their motion for a new trial.

### FACTS

The defendants buy and sell S&H stamps, exchange S&H stamps for other brands of trading stamps and exchange other brands of trading stamps for S&H stamps, for a fee, and advertise by newspaper, radio and other media that they conduct a trading stamp exchange.

Plaintiff does an interstate business in forty-seven states in the United States and has done business in Oklahoma since 1911. In the conduct of its business, plaintiff enters into license contracts with retail merchants (licensees) offering a variety of goods and services, and grants to each licensee in a particular line of business within a competitive area the exclusive right to offer and issue S&H stamps. There are approximately 70,000 licensees throughout the United States and approximately 1,000 licensees in Oklahoma.

Plaintiff's method of doing business generally, and particularly in Oklahoma, is as follows: It contracts in writing with its licensees, whereby it agrees, inter alia, to furnish the licensees advertising signs; to furnish for distribution by the licensee the collectors' books which are books in which the collector pastes his stamps; and to redeem the stamps when collected and presented as prescribed. The licensee agrees to advertise the fact that it issues S&H stamps; to pay a stipulated price for a certain number of stamps; and to offer S&H stamps to all customers making cash payments.

The collector's books are offered to the collectors at the licensee's place of business. The stamps must be pasted in a collector's book before plaintiff redeems the stamps for merchandise selected by the collector. The stamp contains no lan-

guage that title to the stamps remain in the plaintiff or that the stamps are not transferable and plaintiff's advertising does not so disclose. However, printed on the inside of the cover sheet of the collector's book is the following:

"NOTICE

"S & H Green Cooperative Cash Discount Stamps when redeemed in accordance with conditions printed below are your compensation for cash payments made.

."All S & H Green Cooperative Cash Discount Stamps now or hereafter issued by The Sperry and Hutchinson Company are subject to all the provisions of the contracts between this Company and the merchants who issue them, and the following rights and conditions, which are expressly reserved by the Company, which the persons acquiring them expressly accept, and which are a part of all contracts between this Company and its merchants, and are binding on the merchants' customers.

"Neither the stamps nor the books are sold to merchants, collectors or any other persons, at all times the title thereto being expressly reserved in the Company, and the right to possession thereof is reserved to it, subject to the rights of the merchants and their customers under the contracts with the Company. The stamps are issued to you as evidence of cash payment to the merchants issuing the same. The only right which you acquire in said stamps is to paste them in books like this and present them to us for redemption. You must not dispose of them or make any further use of them without our consent in writing. * * *"

"The stamps when received by you must be pasted in the book, as that is the method we have adopted for the purpose of preventing their further use. The use of our stamps is restricted to our merchants and their customers."

A catalogue, known as an "Ideabook", is available at the licensee's place of business for the collectors. The "Ideabook" contains pictures of the merchandise available at plaintiff's redemption centers and the number of collector's books filled with stamps necessary to acquire the desired merchandise.

The plaintiff and its licensee agree that title to the stamps shall remain in plaintiff and shall not in any event pass to the licensee or any other person or firm and that the license to issue the stamps is personal to the licensee and that it may not be transferred or assigned.

The contracts between the plaintiff and its licensee does not prohibit the licensee from contracting with other stamp companies to issue the other company's stamps.

Plaintiff provides "redemption centers" and has approximately 14 in Oklahoma. The plaintiff spends millions of dollars annually in extensive national and local advertising, publicizing the desirability and the benefits of the S&H service to S&H stamp collectors and there are more than 33,000,000 S&H stamp collectors in the United States and between 300,000 to 400,000 in Oklahoma.

In the trial court's order sustaining in part and overruling in part defendants' motion to modify and supplement findings of fact, the trial court found that during the calendar year 1961, S&H stamp collectors redeemed merchandise from plaintiff's redemption centers located in Oklahoma of the approximate value of 4 million dollars which merchandise had cash value to plaintiff of approximately 2 million. In this connection, the trial court made no finding as to plaintiff's cost of operation in Oklahoma.

PROPOSITION I

Defendants contend that any collector, who acquires stamps through purchase of merchandise or payment therefor, acquires the title of such stamps and an attempted

restraint of alienation is unenforceable; that if such collector had the title and ownership with the necessary incidents thereto, including the right of transfer, defendants have the right to acquire the stamps from the collectors; and if the collector has the right to sell or exchange them, defendants have the right to acquire, sell or exchange them.

In this connection, defendants argue that the stamps are "articles of commerce" and the attempted reservation of title by plaintiff, in its contacts with its licensees, is a "restraint of trade"; and since the stamps represent a "cash discount" they become immediately "articles of commerce" when issued the same as warehouse receipts, promissory notes or other commercial paper.

Plaintiff argues that it retains title to the stamps and the only rights a collector has in the stamps are for redemption purposes, and that it is entitled to an injunction enjoining defendants from "trafficking" in its stamps.

The S&H green stamp contains this legend on its face, "Sperry & Hutchinson Discount for Cash". In Safeway Stores v. Oklahoma Retail Grocers Ass'n., Okl., 322 P.2d 179, 70 A.L.R.2d 1068, which involved the Oklahoma Unfair Sales (Practice) Act, Title 15 O.S.1961, § 598.1 et seq., we held that giving trading stamps in the usual and customary manner, constituted "a device for giving a discount for cash". In other words, a collector does not receive a "cash discount", but receives a redeemable discount in merchandise (represented by stamps) for paying cash. The issue involved here is whether defendants may be enjoined from "trafficking" in the redeemable discounts (the stamps) as articles of commerce, which a collector receives from a licensee.

Defendants cite the case of Merchants' Legal Stamp Company v. Murphy, 220 Mass. 281, 107 N.E. 968, L.R.A.1915D, 520, as a "bay horse case" to support their theory that when the stamps are issued, they become "articles of commerce" and that plaintiff is not entitled to an injunction enjoining them from "trafficking" in "articles of commerce". The first headnote in the above case states:

"Trading stamps and books are 'articles' within St.1908, c. 454 § 1, providing that every agreement in violation of common law is illegal and void, if thereby a monopoly in the production or sale of any article or commodity tends to be created."

Although the above case holds that trading stamps are "articles" within the cited statute, an examination of the opinion and the second headnote discloses that the method employed by the stamp company in conducting its business was the controlling factor. In the second headnote it is stated:

"Where the direct and intended effect of methods employed by plaintiff in conducting a business in trading stamps was to prevent others from lawfully engaging in similar enterprises, the contract of the plaintiff with defendant as to use of stamps which embodied such monopolistic features of the plaintiff's business was within St.1908, c. 454, § 1, providing that every agreement in violation of common law, in that thereby a monopoly in the production or sale of any article or commodity is created, is illegal and void."

In the above case it is stated that under the stamp company's operation, it controlled nearly ninety per cent of the actual stamp business in the Boston area. The stamp company would decline to supply stamps unless its licensees would stipulate that they would not use trading stamps issued by other stamp companies, and the court found that this provision was to suppress all competition and said: "The monopoly it seeks to establish may not be complete but it has gone far enough to eliminate any effective rivalry. The restriction is not confined to the sale or transfer to a business rival of plaintiff, but the merchant or collector cannot dispose of book or stamps to any one even if their retention unused must result in pecuniary loss. Indeed this is an essential and controlling

feature of the contract, which differs materially from the contract in Gagnon v. Sperry & Hutchinson Co., 206 Mass. 547, 92 N.E. 761."

█ In the instant case the trial court found that there are four other major trading stamp companies in Oklahoma and this competitive feature of plaintiff's business has created the business of defendants. This finding is not against the clear weight of the evidence. In other words, plaintiff's method of operation does not prevent others from engaging in similar enterprises for in Oklahoma there are five major trading stamp companies and the stamp business in Oklahoma is competitive.

In the instant case, plaintiff's licensees are not prohibited from contracting with other stamp companies—there, the licensees were prohibited. The contract in the instant action provides that upon termination thereof the plaintiff "shall repay to the licensee any amount thereof paid by him, for its services and for the use of its system, measured by the number of stamps remaining unused and so returned, * * *." In the Merchants' Legal Stamp Company case, the licensee could not dispose of the stamps to anyone, even if their retention resulted in a pecuniary loss.

The method by which Merchants' Legal Stamp Company conducted its business in Massachusetts was monopolistic. In Sperry & Hutchinson Co. v. McBride, 307 Mass. 408, 30 N.E.2d 269, 131 A.L.R. 1254, the Supreme Judicial Court of Massachusetts, in effect, recognized the legality of the method by which plaintiff was conducting its stamp business. As will be hereinafter shown, plaintiff's method of conducting its business in Oklahoma is not monopolistic or in violation of any State or Federal Laws.

In Sperry & Hutchinson Co. v. Mechanics' Clothing Co., C.C., 135 F. 833, it was held that Sperry & Hutchinson had the right to restrict the use of the stamps by contract, and the stamps, having been once issued by a merchant, were functus officio, except for redemption, and, though transferable for that purpose, defendants' use thereof

was improper interference with Sperry & Hutchinson's business, which it was entitled to restrain. In that case the court said:

"The trading stamp, when issued, represents a closed transaction between the merchant and the company, as well as an outstanding obligation to redeem the stamp. As a token or voucher of the sale and use of so much advertising, the trading stamp is necessarily a consumable article—an article designed for a single use in an advertising scheme. What the defendants wish to do is to procure for themselves a trade advantage as distributors of trading stamps. Although the stamps have been issued to collectors for a limited purpose, the defendants desire to use them for a purpose for which obviously they were not intended in the hands of a collector. * * * The defendants have devised the scheme of procuring from individual collectors a very large number of the stamps, and, by uniting in a single hand what ordinarily would be distributed in many hands, they secure a supply sufficient for advertising purposes. In other words, as transferees of the rights of persons who did not acquire these stamps for advertising purposes, they secure for themselves the ability to do what is not intended that a collector of the stamps should do. * * * By reusing the stamp as an advertisement, they seek to get for nothing what others are required to pay for, and to institute a destructive competition with authorized merchants, which tends to destroy the value of the stamp and to injure the complainant's (Sperry & Hutchinson) business."

Defendants' counsel argued the above case on the theory that the court could disregard entirely the rights of Sperry & Hutchinson and its licensee, and that, "although both of these parties have expended their money in expectation of a benefit, this benefit may be destroyed by defendants". In turning down this contention, the court said

that defendants could acquire no greater rights than the customer-collector had, and that if they did reissue them, they were appropriating for themselves, and without consideration, what fairly belonged to the licensee and Sperry & Hutchinson. The court stated that a trading stamp is not ordinary property. It is sui generis and an artificial creation. And we find this statement: "While a transfer of ordinary property by the owner upon any terms usually deprives other persons of no rights, this is not always the case with the trading stamp. While it may be transferred in any way which confines its use within the purpose for which it was issued, it may not be transferred in such a way as to destroy its value as an instrument of special trade advantage or advertising, or as to deprive the company which created the value of the stamp, and which has assumed the obligation to redeem it, of its right to compensation for expenditures and for redeeming the stamps."

In the above case the court found that defendants knew that the stamps were issued to customers for a certain purpose—that is, for redemption. Defendants in the instant action have knowledge of the method by which plaintiff conducts its business.

In Sperry & Hutchinson Co. v. Temple, C.C., 137 F. 992, defendant Temple knew of the manner in which Sperry & Hutchinson conducted its business and the court held Temple was not an innocent purchaser without notice in purchasing issued stamps for resale. The court further held:

"The business of issuing trading stamps to merchants to be given to purchasers of small bills for cash, redeemable in articles of merchandise, etc., when honestly conducted, is not contrary to public policy.

"Where defendant purchased complainant's trading stamps, among others, for resale, and such purchases seriously interfered with complainant's business in issuing such stamps for redemption in articles of merchandise, etc., complainant was entitled to an injunction prohibiting defendant from advertising that he would purchase complainant's stamps, and from selling stamps so purchased as articles of merchandise."

In the above case the Court said: " * * * The nature of the business requires that there should be a certain monoply. If the stamps were on the market generally, thus opening the business extensively, no merchant would have any inducement to deal with the complainant. Therefore, by the very nature of the business, the stamps are not intended to be dealt with by the public generally, and are not transferable in the general and ordinary sense of the word. * * * "

In Sperry & Hutchinson Co. v. Louis Weber & Co., C.C., 161 F. 219, the court held:

"Complainant issued trading stamps to merchants under contracts providing that they should be given out only to cash customers as premiums on purchases, and when presented by such customers in books would be redeemed by complainant in goods. They were nontransferable on their face, and the books were supplied by complainant and contained advertisements of the merchant's business. Held, that the business and contracts were lawful, and that complainant was entitled to protection by injunction against a rival in the business, which sent out agents to purchase or exchange its own stamps for partly filled books containing complainant's stamps, some of which were again resold at a low price, materially interfering with complainant's business."

In the body of the opinion we find this language:

"It is the essence of complainant's business that its subscribers shall get the full benefit of its methods of advertising and assistance. Its stamps are not, in the full sense, property. Their nontransferability is an essential element of their value, both to complainant

and its subscribers. It may be assumed that both parties are in the transaction for profit. It is not fair to say that complainant's only interest consists in the presentation of the stamps for redemption, if the means employed to that end result in killing the demand of subscribers for the stamps. The parties are entitled to carry on their affairs in such a way as to serve the business interests of each, so long as they are lawfully conducted. To create an unfair market for partly filled and non-transferable stamp books would have a tendency to keep purchasers from trading with subscribers until they were filled. This has been held in a number of cases instituted by complainant to protect its business. Among these are the Cases of Mechanics' Clothing Company (C.C.) 128 Fed. 800, 1013 (same in [C.C.] 135 Fed. 833), Brady (C.C.) 134 Fed. 691, Beal (C.C.) 145 Fed. 659, Asch (C.C.) 145 Fed. 659, and Temple (C.C.) 137 Fed. 922. In addition there are unpublished opinions and decisions to the same effect by Judge Morris of Baltimore, Judge McPherson, Eastern district of Pennsylvania, Judge Thomas, Eastern district of New York, and Judge Lacombe, Southern district of New York."

In Sperry & Hutchinson Co. v. Fenster, 219 F. 755, an injunction was granted in favor of Sperry & Hutchinson, and in granting such injunction, the court held:

"Act Cong. October 15, 1914, c. 321, § 3, 38 Stat. 731, prohibiting the making of a contract fixing the price for merchandise on condition that the lessee or purchaser shall not use or deal in the merchandise of a competitor, if the effect of the contract is to substantially lessen competition or tend to create a monopoly, does not prohibit a trading stamp concern from restricting redemption privileges to subscribers under contract with it binding such customers to distribute stamps only to customers."

In the body of the opinion we find this statement:

"* * * the sale of trading stamps is much more like the transactions considered in Henry v. A. B. Dick Co., 224 U.S. 1, 32 Sup.Ct. 364, 56 L.Ed. 645, Ann.Cas.1913D, 880, in that the reason for insisting upon a contract is to restrict the sharing in a certain legitimate privilege, to those who pay for the privilege, and to prevent, by a mere transfer of the trading stamps, the bestowal of the advantage of giving out the stamps, and of getting trade thereby, upon any person who might by holding the stamps be entitled to claim the rights of redemption.

"It is evident that the intent and acts of persons taking the stamps and seeking to redeem them for a certain premium, and also the resultant benefits to that person, are entirely different and are based upon substantially different rights *from those of a party who is seeking to attract customers and to build up his own trade through the privilege of dealing, as it were, in trading stamps, without payment for that privilege and with no intention of getting the goods for which the stamps are redeemable.*

"The right to redeem the stamps is a property right transferable by possession while the license to use them for advertising purposes is not transferable without compensation to the person granting that right, viz., the plaintiff herein." (emphasis ours.)

In the instant action, defendants are seeking to attract customers and to build up their own trade through the "trafficking" in plaintiff's trading stamps, without payment for that privilege and without intention of getting the goods for which the stamps are redeemable.

In Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 309 Ill. 193, 140 N.E. 864, the Supreme Court of Illinois said that stamps were not negotiable instruments and the "purpose of the provision concerning

their redemption was to aid the one who issued them in establishing a closer and continuous relation between himself and his customers by having the customer redeem the coupons. No one else has any right to traffic in these stamps. By numerous cases in this country, by which appellant here sought to enforce the nontransferability of such stamps, such feature has been sustained." The court then cited the Weber Mechanics Clothing Co. and Fenster cases hereinbefore discussed.

In State by Richman v. Sperry & Hutchinson Co., the State commenced proceedings against the stamp company to require escheat of the cash value of unredeemed stamps. The Superior Court, Chancery Division, 49 N.J.Super. 165, 139 A.2d 463, rendered judgment for the stamp company. On appeal to the Appellate Division, 56 N.J. Super. 589, 153 A.2d 691, in affirming the judgment, the court recognized the fact that a housewife may redeem in her own book all of the stamps collected by individual members of her family and said the State's rights are no greater than that of each stamp holder. However, the court said the stamps were not freely transferable without the stamp company's consent because the collector is so apprised both by legend on the reverse side of the stamps and by the "notice" in the stamp books. The above decision was affirmed by the New Jersey Supreme Court in 31 N.J. 385, 157 A.2d 505, for the reasons stated in 153 A.2d 691.

In the instant action, plaintiff and defendants submit and rely upon diametrical theories. Plaintiff's theory is that it has title to the stamps at all times, and since it has title to them, the same may not be sold or exchanged without its consent; and, the only rights a collector has in trading stamps issued to him by a licensee is the right of redemption and if a collector should transfer his right of redemption to another person without its consent, plaintiff would not be obligated to redeem the stamps. On the other hand, defendants' theory is that after the trading stamps have been issued by a licensee

to a collector, such stamps immediately become articles of commerce and can be sold and exchanged as ordinary property; that plaintiff has no interest in the stamps after the same have been issued to a collector, but only an obligation of redemption; and since plaintiff has no interest, but only an obligation to redeem, it can not enjoin the sale and exchange of the stamps as ordinary property or articles of commerce.

In analyzing the stamp cases we find the courts have recognized that one of the inherent and necessary characteristics of the trading stamp business requires that a stamp company maintain certain controls over the trading stamps and that its interest in the stamps after the same have been issued to a collector is more than an obligation to redeem. In other words, the courts have recognized that if trading stamps when issued in the ordinary and usual manner, immediately become ordinary property and could be sold and exchanged as such, such uses would be so inconsistent with the purposes for which the same were issued, and so destructive to a legal method of doing business, that such action should be enjoined.

We can only conclude that trading stamps, when issued in the ordinary and usual manner to a collector, do not constitute ordinary property or articles of commerce as those terms are generally used; but, in effect, is an "instrument" employed by a stamp company in conducting a business which is in the nature of a sale to its licensees of a promotional or an advertising service. The issue herein is whether plaintiff is entitled to an injunction enjoining the defendants from trafficking in S&H stamps or the "instruments" employed by plaintiff to conduct its business as articles of commerce.

The trial court found that if S&H stamp collectors could obtain S&H stamps from sources other than S&H licensees, the value of plaintiff's service to S&H licensees would be substantially reduced; that defendants' trafficking in S&H stamps

and collector's books is injurious to plaintiff's business and property in that it interferes with its right to select its licensees, to maintain the value of its stamps, to control distribution and issuance of its stamps, and to provide a promotional and advertising value to its licensees; and that four other major trading stamp companies are engaged in business in Oklahoma and this competitive feature of plaintiff's business has created the business of defendants.

In its conclusions of law the trial court found that defendants' trafficking in S&H stamps constitutes unfair competition, misappropriation of plaintiff's good will and unjustified interference with its contracts with its licensees and with stamp collectors.

We find the success of plaintiff's business depends upon the value of its services to its licensees and the number of stamps issued. Plaintiff, in its contract with its licensees, is obligated to advertise that its licensees issue S&H stamps; to advertise the benefits that the customers will receive by purchasing from the licensees; to furnish collector's books; and to redeem the S&H stamps when collected and presented.

Plaintiff's contract with its licensees prohibit the licensees from disposing of the stamps in any manner other than as provided in the contract and the license to issue the S&H stamps is personal to the licensee and may not be transferred or assigned.

The contract right to offer and issue S&H stamps by the licensees and plaintiff's discharge of its obligations under its contract are, in effect, an advertising device which is beneficial to the licensees; the offering and issuing the S&H stamps is not merely to induce a single purchase but to provide an incentive for continued patronage, and the offering and issuing S&H stamps are inducements and incentives for trading at a licensee's place of business.

We find that if collectors could sell or purchase S&H stamps on the open market for cash, or could obtain such stamps from any and all retailers, whether such retailers had or did not have a license from plaintiff to offer and issue S&H stamps that the value of plaintiff's services to its licensees would be reduced; that it would reduce the tendency of a collector to patronize a licensee's place of business if one of the incentives was to obtain S&H stamps; that the value of plaintiff's services to its licensees (value of the stamps) would not be determined by contract between the plaintiff and its licensee, but would be determined by market conditions created by people unauthorized to traffic in S&H stamps but who do traffic in the same; and that plaintiff and its licensees have expended great sums of money to create a demand for S&H stamps and have created a means whereby the collectors can receive a benefit by patronizing a licensee who offers and issues S&H stamps. Plaintiff has also created the good will in connection with its stamps and defendants have appropriated this good will without the consent of and against the wishes of plaintiff.

We can only conclude that the trial court's findings are not against the clear weight of the evidence and that defendants' actions, by trafficking in S&H stamps, as articles of commerce, constitutes a wrongful and unwarranted interference with plaintiff's business.

In 28 Am.Jur., Injunctions, Sec. 70, page 566, it is said that, "The right to conduct a business, * * * without the wrongful interference of others is a property right which equity will, in a proper case, protect by injunction, provided, of course, the same is legal and not prohibited by law." In Paramount Pictures, Inc. v. Leader Press, Inc., 10 Cir., 106 F.2d 229, the court said that, " * * * the right to carry on a lawful business is a valuable right which a court of equity will protect against unwarranted interference or undue obstruction." And, " * * a court of equity will extend appropriate

protection to intangible as well as tangible property which forms a part of a lawful business. Equity does not draw any distinction. between the two kinds of property in respect of protection against wrongful invasion."

█ We can only conclude that plaintiff is entitled to an injunction enjoining defendants from trafficking in the S&H stamps as articles of commerce, and the judgment of the trial court should be affirmed if plaintiff is legally conducting its business. See Moral Insurance Company v. Fechtel, Okl., 280 P.2d 716.

## PROPOSITION II

Defendants contend that the plaintiff's contracts with its licensees wherein plaintiff seeks to reserve title to the stamps are void and illegal and against public policy of the State and the United States because each contract is an integral part of a vertical combination in restraint of trade, and plaintiff violates the State and Federal anti-monopoly laws in the operation of its business based upon said contracts.

To sustain the above contention defendants cite Article 2, Sec. 32; and Article 5, Sec. 44, of the Oklahoma Constitution; and Title 79 O.S.1961, §§ 1 & 3; and the Federal Statutes prohibiting monopolies and cases construing the Sherman Anti-Trust Act. Under several sub-divisions the plaintiff argues the stamps are articles of commerce; attempted reservation of title to the stamps, which are articles of commerce, restrain trade by vertical combinations; restraints against alienation are illegal; monopoly by whatever means is condemned; vertical combinations are prohibited; "tying agreements" are illegally monopolistic; and there are no contractual rights between the plaintiff and the collectors.

Under the plaintiff's contracts with its licensees, the licensee purchases no commodity from the plaintiff for resale. The licensee does purchase, however, the services of plaintiff and the licensee is not prohibited from purchasing the services of another stamp company. The value of plaintiff's services to its licensee is, in effect, determined by the volume of business done by the licensee. The collector is not obligated to take the stamps offered by the licensee nor is he obligated to present for redemption the stamps he may obtain. The collector is under no obligation to the licensee or to the plaintiff, but the plaintiff is obligated to redeem the stamps in merchandise if the same are presented for redemption. The collector may enforce the obligation or he may ignore it by failure to present the stamps for redemption.

Without question, the method by which plaintiff conducts its business, restraints are placed on others from trafficking or trading in its stamps. However, the evidence does not disclose that plaintiff has monopolized the trading stamp business (the trial court found there were four other major stamp companies doing business in Oklahoma), nor does the direct and tended effect of the methods employed by plaintiff prevent others from engaging in similar enterprises.

█ In Sperry & Hutchinson Co. v. Temple, C.C., 137 F. 992, it was held that the business of issuing trading stamps to be given to purchasers of small bills for cash, redeemable in articles of merchandise, etc., when honestly conducted, is not contrary to public policy; and, that the nature of the business required there should be a certain monopoly.

In Sperry & Hutchinson Co. v. Fenster, 219 F. 755, it was held that: "Act Cong. October 15, 1914, c. 323, § 3, 38 Stat. 731, prohibiting the making of a contract fixing the price for merchandise on condition that the lessee or purchaser shall not use or deal in the merchandise of a competitor, if the effect of the contract is to substantially lessen competition or tend to create a monopoly, does not prohibit a trading stamp concern from restricting redemption privileges to subscribers under contract with it binding

such customers to distribute stamps only to customers."

In Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162, the Supreme Court of the United States said that in the absence of any purpose to create or maintain a monopoly, the Sherman Anti-Trust Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.

In Klor's Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed. 2d 741, it is stated that Section 1 of the Sherman Anti-Trust Act makes illegal any contract, combination or conspiracy in restraint of trade and section 2 forbids any person or combination from monopolizing or attempting to monopolize any part of interstate commerce. The Court said, "Group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be in the forbidden category."

In the instant action, plaintiff does not follow a pattern or practice of refusing to deal with any particular merchant or group of merchants. As found by the trial court, plaintiff " * * * grants to each licensee in a particular line of business the exclusive right to its S&H Cooperative Discount System within his competitive area". If a licensee in a particular line of business did not have the exclusive right to issue stamps within its competitive area, the value of plaintiff's services to its licensees would be greatly reduced. And it is important that licensees be confined to non-competing retailers in a given competitive area because the value of plaintiff's services to its licensees is measured in terms of the advantage the licensees gain in attracting new customers and retaining those he already has. In other words, plaintiff grants exclusive rights to its licensees to issue its stamps in the licensees' com-

petitive area but it does not refuse to deal with any particular merchant or group of merchants. Plaintiff's method of operation springs from business requirements and not for the purpose of monopolizing the trading stamp business or restraining trade.

In Thomas v. Belcher, 184 Okl. 410, 87 P.2d 1084, we held that a retailer's contract with a wholesaler or distributor of merchandise limiting the retailer to a definite and exclusive territory for the resale of such merchandise does not restrain trade or competition in violation of the Federal or State Anti-Trust Laws. See also Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D.C. 161, 243 F.2d 418. If a manufactor and dealer, or a wholesaler and retailer, can agree to an exclusive distributorship in a given area, we can see no illegality in plaintiff granting exclusive rights to a licensee in a particular line of business in a competitive area to issue its stamps.

In the Thomas v. Belcher case, supra, we said:

" * * * The illegality of contracts in restraint of commerce is a product of public policy. If ·such contracts are not contrary to public policy they violate neither the federal nor the state anti-trust laws. Until a commercial arrangement between parties reaches a stage where commodities needful to the public welfare are restricted commercially to the point where the public is exposed to the evils of monopoly such arrangement is not in restraint of trade within the meaning of the anti-trust laws."

In Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277, it is stated that a "tying" arrangement violates Sec. 1 of the Sherman Anti-Trust Act when a seller enjoys a monopolistic position in the market for the "tying" product and a substantial volume of commerce in the "tied" product is re-

strained; and, that the common core of the adjudicated unlawful tying arrangements is the forced purchase of a second distinct commodity with the desired purchase of a dominant "tying" product, resulting in economic harm to competition in the "tied" market.

In the instant action, licensees do not purchase a commodity but a service, and is not required to purchase a "tying" product. The collectors have no obligations to the plaintiff as plaintiff's licensees, but the obligations are in favor of the collectors. The trading stamp, when issued represents a closed transaction between plaintiff and its licensee, and creates an outstanding obligation on the part of plaintiff to redeem the stamps. See Sperry & Hutchinson Co. v. Mechanic's Clothing Co., C.C., 135 F. 813.

For a general discussion on the legality of the trading stamp business as generally conducted, see The Ohio State Law Journal, Volume 23, No. 1, (1962) pages 35 through 55.

Defendants have cited no case and our independent research fails to disclose any cases supporting the proposition that plaintiff's method of conducting its business in Oklahoma violates any State or Federal laws. In our opinion, and we so hold, that the method by which plaintiff conducts its business in Oklahoma is not in violation of our State or Federal laws.

## PROPOSITION III

Defendants contend that public interest is adversely affected by the judgment of the trial court and such is therefore improper, inequitable and improvident; and that plaintiff's hands are unclean and is estopped by its illegal conduct, its mode of operations and its failure to treat the stamp collectors fairly, as well as by its discriminatory practices.

Title 79 O.S.1961, § 1, provides that every act, agreement, contract, or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce within this State, which is against public policy, is declared to be illegal. Article 2, Sec. 32, of our Constitution provides that perpetuities and monopolies are contrary to the genius of free government, and shall never be allowed.

However, until a commercial arrangement, or a method of doing business, reaches a stage where the needs of the public are restricted to the point where the public is exposed to the evils sought to be prohibited, or such restriction is contrary to the genius of free government, such arrangement or method of doing business is not against the public policy. See Thomas v. Belcher, 184 Okl. 410, 87 P.2d 1084.

We have heretofore determined that plaintiff's business is not illegal; that it does not violate any State or Federal laws; and that defendants' actions are injurious to plaintiff's business. We have also determined that the stamp business in Oklahoma is competitive and that the competition created by plaintiff and four other major stamp companies doing business in Oklahoma has created defendants' business.

There is no evidence that plaintiff has employed discriminatory practices in selecting or entering into contracts with its licensees; or the method of conducting plaintiff's business prevents others from lawfully engaging in similar enterprises; or that any collector has any more or less rights than any other collector. Each collector has the same redemption privileges as all other collectors and there is no evidence that the stamps, when properly presented for redemption, have any more or less redemption value in one redemption center than in another redemption center.

The trial court found that in one state plaintiff is prohibited by law from carrying on its business; in three other states, plaintiff is required by statute to redeem the stamps in cash; and in thirteen states the statutes require that the stamps be redeemed by plaintiff either in cash or merchandise—at the option of the holder. Our Legislature has not enacted legislation re-

quiring plaintiff to redeem the stamps in cash or redeem the stamps in cash or merchandise—at the option of the holder. In other words, our Legislature has not seen fit to enact any legislation specifically concerning the stamp business or any legislation prescribing the rights, duties and obligations of stamp companies, licensees, and collectors; except, however, penal statutes (Title 21 O.S.1961, §§ 361–364), which are not pertinent in the case at bar.

We can only conclude that plaintiff's method of conducting its business does not adversely affect the public interest; that it is legally conducting its business, and the judgment of the trial court is not improper or inequitable.

## CONCLUSIONS

In the instant action, we are not concerned with redemption rights but whether plaintiff is entitled to injunctive relief. Whether injunctive relief is to be granted in an action in equity is a matter within the sound legal discretion of the court, to be determined in the light of all the facts and circumstances and each case must be considered in the light of its own particular facts. Cooke v. Southwest Petroleum Co., 177 Okl. 458, 61 P.2d 16.

 The controlling issues herein presented, i. e., the manner or method employed by plaintiff and defendants in conducting their business, were questions of fact and these issues were resolved in favor of the plaintiff and against the defendants by the trial court. In Noblin v. Wilson, 187 Okl. 173, 101 P.2d 805, we held that the findings of the trial court should be strongly persuasive, and should not be set aside unless this Court can say, in equity and good conscience, that the conclusion reached by the trial court is against the clear weight of the evidence.

We can only conclude and hold that the judgment of the trial court should be and the same is hereby affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD and BERRY, JJ., concur.