Jim COOPER, d/b/a Jim Cooper
Trucking Company, Appellee,

v.

Tom T. TANAKA, d/b/a Tommies Cello
Pack of Oklahoma City,
Oklahoma, Appellant.

No. 51440.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 21, 1978.

Rehearing Denied March 14, 1978.

Certiorari Denied Oct. 2, 1978.

Released for Publication by Order of
Court of Appeals, Oct. 5, 1978.

Forest N. Simon and O. B. Martin, Oklahoma City, for appellee.

Francis M. Pickel, Jr., Oklahoma City, for appellant.

ROMANG, Judge:

This appeal is filed under 12 O.S.1971, § 952(b)(3) on the certification of the trial judge "that an immediate appeal may ma-

terially advance the ultimate termination of the litigation . . . " The Supreme Court issued a stay and assigned the matter to this Court.

The District Court overruled the demurrer of Defendant-Tanaka. We thus accept the facts as pleaded in the Plaintiff's petition. The Defendant-Tanaka sold twelve (12) truck tractors and trailers to William H. Cherry. Due to Cherry's inexperience in the trucking business the sales agreement included an undertaking by the vendor-Tanaka to give Cherry a preference in shipping Tanaka's produce and exempt commodities. This preference was over all other available truckers but was not over Tanaka's remaining three (3) truck tractors and trailers. Cherry's preference was further limited to the availability of his trucks. Tanaka agreed not to increase his fleet for five (5) years, the term of the preference.

Cherry leased this equipment to Plaintiff-Cooper. As a collateral part of this transaction Cooper and Tanaka entered an agreement essentially extending Cherry's preference to Cooper. Cooper claims that Tanaka breached this contract by failing and refusing to permit Cooper's trucks to haul Tanaka's produce. Cooper claims loss of earnings of $1,500,000 and other damages of $90,000 as a result of this breach. The Defendant filed a remarkable document entitled "OBJECTION TO INTERROGATORIES" in which he challenged the legality of the alleged contract on the ground that it violated the Oklahoma Constitution and Statutes, and the U. S. Constitution. The District Court liberally treated this as a demurrer for failure to state facts sufficient to constitute a cause of action. 12 O.S.1971, § 267 Sixth and § 268. Based on the statutes cited by Defendant and the argument on appeal, the thrust of the demurrer is that the contract is in restraint of trade and thus illegal. See 15 O.S.1971,

§ 217. For reasons mentioned below we affirm the overruling of the demurrer.

Section 217 of Title 15 provides that "[e]very contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided in the next two sections [§§ 218 and 219], is to that extent void." Sections 218 and 219 approve certain restraints ancillary to the sale of "the good will of a business" or "upon . . . a dissolution of the partnership" within certain geographic limits.

 More specific in our opinion,[1] is 79 O.S.1971, § 1 which provides that "[e]very . . . contract . . . in restraint of trade or commerce within this State is hereby declared to be against public policy and illegal." Prior to 1971 this statute provided that a contract in restraint of trade "which is against public policy is hereby declared to be illegal." This required both a finding of a contract in restraint of trade and that it violated public policy. *State v. Coyle*, 7 Okl.Cr. 50, 122 P. 243 (1912) reh. den. 8 Okl.Cr. 686, 130 P. 316. The 1971 amendment declared all contracts in restraint of trade to be against public policy in and of themselves.

Taken literally, 79 O.S.1971, § 1 would be incapable of administration since virtually all contracts restrain some trade. The problem is essentially the same as that encountered in the evolution of the Sherman Antitrust Act, 15 U.S.C. § 1 which similarly declared "*[e]very* contract . . . in restraint of trade or commerce among the several states . . . to be illegal." (Emphasis ours.) After initial constructions based on the literal meaning of "every", *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897), the U. S. Supreme Court adopted the "rule of reason" approach to the Sherman Act whereby only "unreasonable"

1. We think that 15 O.S.1971, § 217 is not the relevant statute. If restrained, the Defendant was required to use Plaintiff's trucks if (1) the Defendant had none of his own available and (2) Plaintiff had trucks available. We do not believe this amounts to restraining the Defendant "from exercising a lawful profession, trade or business . . . " within the meaning of §§ 217, 218 and 219. Even the restriction on expanding his own fleet is at most a limited restriction on the manner in which the business is done and does not restrain Defendant from exercising his business.

restraints of trade were illegal. *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). This was based in some measure on the opinion that the phrase "restraint of trade" was intended by Congress to have its common law meaning which limited illegality to naked restraints and restraints not reasonably related to some legitimate interest of the contracting parties. See Bork, The Rule of Reason and the Per Se Concept: Price Fixing and Market Division, 74 Yale L.J. 775 (1965). See also *United States v. Addyston Pipe and Steel Co.,* 85 F. 271 (6th Cir. 1898) mod. and aff'd 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899) for then-Judge Taft's classic statement of the common law restraint of trade.

■ Based on the experience of the U. S. Supreme Court in construing a statute virtually indistinguishable from our own,[2] we believe that the concept "restraint of trade" as used in 79 O.S.1971, § 1 was used by our legislature in its common law context and thus declares illegal only contracts unreasonably in restraint of trade. We find nothing in our caselaw reflecting a different view. We are reinforced in this belief by the statutory admonition that the "common law, as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma . . . ." 12 O.S.1971, § 2. See also Fischer, Antitrust Law in Oklahoma, 48 O.B.A.J. 413 (1977).

A landmark English case on the common law restraint of trade was *Nordenfelt v. Maxim Nordenfelt Guns and Ammunition Co.* [1894] A.C. 535 where Lord Macnaghten said:

"The true view at the present time I think, is this: The public have an interest in every person's carrying on his trade freely: so has the individual. All interference with individual liberty of action in trading, and all restraints of trade of themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule. But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case. It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable—reasonable, that is, in reference to the interests of the parties concerned and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party in whose favor it is imposed, while at the same time it is in no way injurious to the public."

From such English and American precedents the Restatement of Contracts declared that "[a] bargain in restraint of trade is illegal if the restraint is unreasonable." § 514. Cf. Restatement 2d (Tent. Draft No. 12, 1977) § 328 which provides a "promise is unenforceable on grounds of public policy if it is unreasonably in restraint of trade."

Section 515 of the Restatement provides:

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or

(b) imposes undue hardship upon the person restricted, or

(c) tends to create, or has for its purpose to create, á monopoly, or to control prices or to limit production artificially, or

(d) unreasonably restricts the alienation or use of anything that is a subject of property, or

(e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property

---

**2.** We are aware of the further evolution of the "rule of reason" by the U.S. Supreme Court into the doctrine that certain types of restraint, e. g. price fixing and horizontal territorial allocations are "per se" violations of the Sherman Act. Whether our statute will evolve such a doctrine depends on further developments and guidance from our Supreme Court.

or to an existing employment or contract of employment."

And § 516 provides that

"The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly:

(a) A bargain by the transferor of property or of a business not to compete with the buyer in such a way as to injure the value of the property or business sold;

\* \* \* \* \* \*

(e) A bargain to deal exclusively with another."

■ This general discussion of the common law on restraint of trade serves to highlight our own statutory prohibitions. The authorities cited indicate that a contract must unreasonably restrain trade to be illegal and that the reasonableness of the restraint will be judged by assessing (1) the restraint against (2)(a) the public's and the individual's need and entitlement to free commerce and the right to earn a livelihood by employment and (b) the necessity of the restraint to protect and effectuate the basic transaction.

■ In this case the Defendant argues that the alleged contract prevented him from dealing with other truckers and thereby restrained trade. To be sure, the provision requiring the Defendant to use the Plaintiff's trucks, if available, restrained him from securing transportation from whomever he could as he would have been free to do but for the contract. But the legal question is whether this restraint was unreasonable in light of the interests of the parties at the time of the original sale to Cherry. We cannot say, as a matter of law, that the transaction alleged in Plaintiff's petition is illegal per se. The commercial setting, objectives and needs of the parties, and the needs of the Plaintiff must be assessed. Whether the restraint, if originally reasonable, remains so when the interests of the Plaintiff-lessee are considered also requires an assessment of the facts surrounding that transaction.

On trial, the facts may justify the submission of the issue to the trier of fact. But the petition clearly states facts sufficient to constitute a cause of action. That being the only issue submitted, the trial court is affirmed.

AFFIRMED.

BOX, P. J., and REYNOLDS, J., concur.