Dear Representative Sullivan,
This office has received your request for an Attorney General Opinion asking, in effect, the following questions:
 1. May the University of Oklahoma enter into a contract with a vendor for multiple years, such as a sole source contract for copier services for five to ten years?
 a. Would such an agreement that would guarantee no competition for a number of years be valid?
 2. May the University of Oklahoma enter into long-term contracts with vendors, such as a five-year contract for the exclusive right to sell soft drinks at all University facilities?
 a. May the University grant a monopoly for any product for long periods of time?
 3. Does a provision in a "request for proposal" for copier services, which asks the bidder if there would be a dollar value associated with the distinction of becoming the sole or major supplier to the University of Oklahoma and requests the bidder to indicate if it would contribute to a fund for scholarships or other improvements, constitute a solicitation for a kickback?
Your questions relate, in part, to a request for proposal ("RFP") issued by the University of Oklahoma ("the University") for copier services. After your opinion request was received by this office, the University withdrew the RFP. You have indicated that you are still interested in an opinion on these issues for future reference.
 I. LONG-TERM CONTRACTS
Your first two questions, numbers 1(a) and 2(a) above, relate to the authority of the University to enter into long-term contracts. The Board of Regents of the University of Oklahoma derives its authority to enter into contracts from the Oklahoma Constitution and statutes. Article XIII, § 8 of the Oklahoma Constitution establishes the Board of Regents of the University of Oklahoma as an independent body charged with the power to govern the University. Board of Regents of University ofOklahoma v. Baker, 638 P.2d 464, 467 (Okla. 1981). The University's Board of Regents is authorized to enter into contracts, purchase supplies, materials and equipment and to authorize officials of the University to act on its behalf in the making of contracts, or in carrying out the powers conferred upon it. 70 O.S. Supp. 1997, § 3305[70-3305](c) and (d).
Pursuant to Article X, § 23 of the Oklahoma Constitution, however, neither the University nor any other State institution or agency may enter into contracts that bind the State for financial obligations beyond the current fiscal year. This section provides, in part:
 Any department, institution or agency of the state operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency shall not incur obligations in excess of the unencumbered balance of cash on hand.
Okla. Const. art. X, § 23(5).
Pursuant to Article XIII-A, § 3 of the Oklahoma Constitution the legislative appropriations for institutions of higher education shall be made in consolidated form without reference to any particular institution and the Oklahoma State Regents for Higher Education shall allocate to each institution according to its needs and functions.
Article X, § 23 of the Oklahoma Constitution prevents State agencies and institutions from entering into contracts that commit State funds beyond the current fiscal year. It was interpreted in U.C. Leasing v. State Board of Public Affairs,737 P.2d 1191 (Okla. 1987) and Indiana National Bank v. StateDept. of Human Services, 857 P.2d 53 (Okla. 1993), both of which dealt with multi-year equipment lease agreements. Both agreements contained a non-appropriation clause, i.e., a provision that conditioned the yearly continuation of the respective leases upon continued legislative appropriations. The Court upheld the agreements in both cases because the obligation was not absolute and binding upon the State at the time of its execution, but was made contingent upon continued funding on a fiscal year basis by the Legislature continuing to appropriate funds to satisfy the obligation. In In re Petition of University HospitalsAuthority, 953 P.2d 314, 326 (Okla. 1997), the Court observed that multi-year commitments based on the possibility of future legislative appropriations did not violate constitutional debt limitation provisions.
The University recognized the fiscal year limitation in Section 8.4 of its RFP for copier services which provides that "[t]he intended beginning contract period is proposed to end June 30, 1999 with an option to renew annually through June 30, 2003. While it is the intent of the University to maintain the contract for a five (5) year period, as an agency of the State of Oklahoma the University is prohibited from contracting for more than one fiscal year at a time." RFP R-6097-98, § 8.4 (withdrawn).
In regard to your question relating to long-term agreements granting an exclusive right to sell soft drinks at all University facilities, such agreements normally would not implicate the constitutional fiscal year limitation because they typically do not involve the expenditure of State funds; rather, in these increasingly common arrangements the school or university is the recipient of cash bonuses, other incentives, and commissions on the sales of soft drinks in return for granting a soft-drink company a long-term exclusive right to sell its product on campus. To the extent that such agreements involve the commitment of State funds, the fiscal year limitation would apply such that any contract including years beyond the current fiscal year must contain a "non-appropriation clause"; that is, the effectiveness of the contract in succeeding years must be made contingent upon future legislative appropriations.
 II. RESTRAINTS OF TRADE AND MONOPOLIES
In reference to the proposed copier contract, you have questioned the validity of exclusive long-term contracts because they foreclose competition for a number of years. You also ask whether the University can grant a monopoly for any product for long periods of time, such as an exclusive right to sell soft drinks at all University facilities. These questions are resolved by reference to certain constitutional provisions and antitrust statutes. Antitrust laws are designed to prohibit business practices that unreasonably deprive the public of the benefits of competition.
The Oklahoma Constitution provides that "[p]erpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed. . . ." Okla. Const. art. II, § 32. The Constitution requires the Legislature to "define what is an unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, and enact laws to punish persons engaged in any unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, or composing any such monopoly, trust, or combination." Okla. Const. art. V, § 44.
Pursuant to the constitutional mandate, in 1908 the Oklahoma Legislature enacted an antitrust act, most recently codified in Title 79. The Legislature recently repealed these statutes in Senate Bill 1357 and enacted the Oklahoma Antitrust Reform Act, 1998 Okla. Sess. Laws ch. 356, to be codified as 79 O.S. Supp.1998, §§ 201-212[79-201-212] ("the Act"). The language in the applicable provision of the Act is identical to Section 1 of the previous antitrust act and, in fact, has remained unchanged since 1908. The pertinent section reads as follows: "Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal." See79 O.S. 1991, § 1[79-1] (repealed) and 1998 Okla. Sess. Laws ch. 356, § 3(A).[1] Because this language is similar to Section 1 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 et seq., Oklahoma courts have relied upon federal case law when interpreting the Oklahoma laws. Teleco v. Ford Industries, 587 P.2d 1360, 1362
(Okla. 1978). This reliance is codified in the new Act which provides that the "provisions of this act shall be interpreted in a manner consistent with Federal Antitrust Law 15 U.S.C., Section 1
et seq. and the case law applicable thereto." 1998 Okla. Sess. Laws ch. 356, § 12.[2]
The new Act also includes a provision not found in the previous statutes, but relevant to your question pertaining to monopolies. Section 3(B) of Senate Bill 1357,[3] reads as follows: "It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce in a relevant market within this state." This section is similar to Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. "Monopolize" is defined in the Act as "(a) the possession of monopoly power in the relevant market, and (b) the willful acquisition or maintenance of that power by exclusionary conduct as distinguished from growth or development as a consequence of a superior product and/or service, business acumen, or historic accident[.]" 1998 Okla. Sess. Laws ch 356, § 3(D)(1).[4]
"Monopoly power" is defined as "the power to control market prices or exclude competition." Id. § 3(D)(2).[5] The definition of "person" expressly excludes the State of Oklahoma, its departments, and its administrative agencies. 1998 Okla. Sess. Laws ch. 356, § 2(3).[6]
Recognizing that all contracts are by their nature exclusionary, courts have not given a literal interpretation to the antitrust laws. It is well settled that only undue or unreasonable restraints of trade or commerce and not all possible restraints are prohibited by the Sherman Antitrust Act and the Oklahoma antitrust statutes. Board of Regents of University ofOklahoma v. National Collegiate Athletic Association,561 P.2d 499, 506 (Okla. 1977). Contracts in restraint of trade, if not contrary to public policy, violate neither federal nor state antitrust laws. Id. at 505. Every agreement concerning trade restrains trade to some extent because the very essence of such agreements is to bind or restrain. Teleco v. Ford Industries,587 P.2d 1360, 1362 (Okla. 1978). Because a literal application of the provisions of 79 O.S. 1991, § 1[79-1][7] would outlaw every conceivable contract concerning trade or commerce, courts have read into this section and similar antitrust statutes a "rule of reason." Teleco, 587 P.2d at 1363. Certain restraints of trade, such as price-fixing among competitors, are presumed to be unreasonable and are considered "per se" violations. Id.
Under Oklahoma law, the fundamental test of reasonableness of an action that restrains trade is the action's effect on the public. To amount to an unreasonable restraint of trade in violation of Oklahoma's antitrust laws, the anticompetitive conduct must have an effect beyond its effect upon an individual competitor, such that the conduct has an adverse impact on competitive conditions in general as they exist within the relevant field of commerce. Harolds Stores v. Dillard DepartmentStores, 82 F.3d 1533, 1548 (10th Cir. 1996).
In the absence of any purpose to create or maintain a monopoly, the antitrust laws do not restrict the long recognized right of a trader or a manufacturer engaged in a private business to freely exercise his own independent discretion as to the parties with whom he will deal. Rance v. Sperry and Hutchinson Company,410 P.2d 859, 871 (Okla. 1965). A bargain to deal exclusively with another does not impose an unreasonable restraint of trade unless effecting or forming part of a plan to effect a monopoly. Cooperv. Tanaka, 591 P.2d 1181, 1184 (Okla.Ct.App. 1978) (citations omitted). See also J.W. Ripy Son v. Art Wall Paper Mills,136 P. 1080 (Okla. 1913) (a retailer's agreement to buy a particular line of goods exclusively from a manufacturer, for a limited period of time, in a particular locality in consideration of other covenants of mutual advantage is not invalid because in restraint of trade) and Thomas v. Belcher, 87 P.2d 1084 (Okla. 1939) (a retailer's contract with a wholesale distributor limiting the retailer to a definite and exclusive territory does not restrain trade or competition in violation of federal or State antitrust laws).
In determining the unreasonableness of a given restraint, courts identify the relevant geographic and product market, then determine whether an unreasonable restraint exists within that market. Teleco, 587 P.2d at 1364. "The relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks." Tunis BrothersCompany v. Ford Motor Company, 952 F.2d 715, 726 (3rd Cir. 1991) (citations omitted). "[T]he size of the relevant geographic market will differ depending upon the price, durability and size of the product; in practical terms, one would comparison shop in a larger geographic market for a tractor, as compared to a grocery item." Id. "A geographic market is only relevant for monopoly purposes where [various] factors show that consumers within the geographic area cannot realistically turn to outside sellers should prices rise within the defined area." T. HarrisYoung Associates v. Marquette Electronics, 931 F.2d 816, 823
(11th Cir. 1991).
In addition to the antitrust laws, Article V, § 51 of the Oklahoma Constitution is also relevant to your question on monopolies. This section provides as follows:
 The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State.
Okla. Const. art. V, § 51.
Although addressed specifically to legislative acts, this constitutional provision also prohibits the granting of exclusive rights, privileges or immunities by an administrative agency or commission. A.G. Opin. 86-18, 86-19 and 86-78.
The constitutional prohibition against special privileges and immunities "was enacted to preserve equality between citizens who are similarly situated." State v. Lynch, 796 P.2d 1150, 1159
(Okla. 1990). An exclusive contract between a State agency and a vendor does not violate Article V, § 51. In Rice v. State,232 P. 807 (Okla. 1924), the Court held that a contract by the State to sell convict-made shirts to a shirt manufacturer was not a monopoly in violation of Article II, § 32 of the Oklahoma Constitution and was not a grant of an exclusive right, privilege, or immunity within the meaning of Article V, § 51.See also Childers v. West Publishing Company, 156 P.2d 809
(Okla. 1945) (a statute authorizing West Publishing Company to compile, codify and annotate the Oklahoma Statutes under a contract with the State Board of Affairs did not grant an exclusive privilege in violation of Article V, § 51); A.G. Opin. 85-105 (a statute authorizing the Will Rogers Memorial Commission to enter into a contract with the United Daughters of the Confederacy does not grant an exclusive right or privilege in violation of Article V, § 51).
A contract between the University and a copier service for one year with a yearly option to renew for a maximum term of five years, such as the one described in the RFP, does not adversely affect competition or the public. Rather, to the extent an exclusive renewable contract results in a lower cost for copier services to a taxpayer-supported university, it is in the public interest. A contract granting a soft drink company a multi-year exclusive right to sell soft drinks on campus does not violate antitrust laws where competing products are readily available in the relevant geographic market, nor does it constitute a grant of an exclusive right or privilege within the meaning of Article V, § 51. In reference to your more general question as to whether the University may grant a monopoly for long periods of time, the answer depends on the factual circumstances surrounding the individual contract and cannot be answered in an Attorney General Opinion. 74 O.S. Supp. 1997, § 18b[74-18b](A)(5).
 III. KICKBACKS
Your third question is whether a provision in a (now withdrawn) RFP for copier services constitutes a solicitation for a kickback. The relevant provision in the "Proposal Submittals" section of the RFP reads as follows:
 Should a company become the sole or major supplier to OU, would there be a dollar value associated with that distinction? Funds may be used by the President's office for scholarships and other improvements. Indicate if your company would contribute and if so, state the amount. Any monetary contribution should not impact the cost per copy contract.
RFP R-6097-98, § 8.20.7 (withdrawn).
Although you have questioned this provision as a kickback, the referenced contribution is not a kickback under State law. The Anti-Kickback Act of 1974 defines kickback as follows:
 [T]he giving of money or any other thing of value either directly or indirectly by or on behalf of any person, or the agent of any person, holding a contract or bidding to obtain a contract with the state for the furnishing of goods or services of any kind to any state employee or any person holding a higher tier contract with the state for the furnishing of goods or services, when the giving of which is for the purpose of acquiring or holding such contract with the state.
74 O.S. 1991, § 3402[74-3402](1) (emphasis added). The RFP references a contribution to the University, rather than a contribution to a State employee or person holding a higher tier State contract. Therefore, the solicited contribution does not fall under the statutory definition of a kickback.
Although the provision in question is not an illegal kickback, the question remains as to whether it violates competitive bidding laws. Except for the lease-purchase of data processing equipment, State colleges and universities are exempt from the Oklahoma Central Purchasing Act, which provides that no acquisition or contract in excess of $2,500.00 shall be made without the submission of competitive bids by the State Purchasing Director. 74 O.S. 1991, § 85.1[74-85.1], and Supp. 1997, §§ 85.3, 85.7. (The limit was raised to $25,000 in House Bill 1822. 1998 Okla. Sess. Laws ch. 371, § 5).[8] As noted previously, the Board of Regents of the University is authorized to enter into contracts, purchase supplies, materials and equipment and to authorize officials of the University to act on its behalf in the making of contracts. 70 O.S. Supp. 1997, §3305[70-3305](c) and (d). The University of Oklahoma's purchasing policy requires all purchases over $25,000 to be competitively bid.
The purpose of competitive bidding is to secure economy and protect the public from collusive contracts, favoritism or fraud and to promote actual, honest, and effective competition. Hannanv. Board of Education of City of Lawton, 107 P. 646 (Okla. 1909). An RFP provision is impermissible if it would not result in the best bid being received in a particular instance or if it were intended to improperly eliminate a sufficient number of legitimate potential bidders so as to destroy the character of free and competitive bidding. See A.G. Opin. 85-31 (addressing county bidding procedures in 19 O.S. Supp. 1985, § 1505[19-1505]).
The provision in question is problematic because it is unclear whether the University is merely seeking a discount, or a payment in lieu of a discount, in consideration for granting the vendor an exclusive contract or for the distinction of being a major supplier, as suggested in the first sentence of Section 8.20.7 of the RFP, or whether the University is seeking a contribution or donation unrelated to the contract price, as suggested in the last two sentences of that section. While it is perfectly acceptable for the University to ask a vendor to give a discount or make a payment in lieu of a discount to the University as consideration for an exclusive contract or for being a major supplier, a solicitation for a contribution presents an obvious problem.
"Government agencies are uniquely endowed with the power to implement the public will, and as such, are subject to the highest levels of scrutiny by the people whom they serve."Westinghouse Electric Corporation v. Grand River Dam Authority,720 P.2d 713, 717 (Okla. 1986). The public could reasonably question whether a contract awarded under the referenced RFP might have been influenced by a donation to the University rather than by the merits of the proposal. The University apparently recognized the ambiguity in the referenced section and has withdrawn the RFP.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Article X, § 23 of the Oklahoma Constitution precludes State institutions and agencies from incurring any indebtedness beyond the income and revenues for the current fiscal year. A contract ending within the current fiscal year with an annual option to renew does not violate the constitutional limitation.
 2. Neither a multi-year exclusive contract between a vendor and the University of Oklahoma for the purchase of goods or services by the University nor the University's multi-year grant of an exclusive right to a soft drink company to sell its products on the campus of the University violates Oklahoma's Constitution or antitrust laws. Whether the University of Oklahoma may grant a monopoly for any product for long periods of time depends on the factual circumstances of each case and thus cannot be answered in an Opinion of the Attorney General. 74 O.S. Supp. 1997, § 18b[74-18b](A)(5).
 3. A provision in a now withdrawn "request for proposal" that asks the bidder if there would be a dollar value for being a sole or major supplier to the university and if the bidder would contribute to a fund for scholarships or other improvements does not violate the Anti-Kickback Act of 1974. 74 O.S. 1991, § 3402(1). There is no legal prohibition against a vendor offering a discount or payment in lieu of a discount as consideration for being a sole or major supplier. However, to the extent that an RFP for a contract under which public funds will be expended for goods or services suggests or requests a donation to the institution, it undermines the principles of competitive bidding.
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 KATHRYN BASS ASSISTANT ATTORNEY GENERAL
[1] To be codified at 79 O.S. Supp. 1998, § 203[79-203](A).
[2] To be codified at 79 O.S. Supp. 1998, § 212[79-212].
[3] To be codified at 79 O.S. Supp. 1998, § 203[79-203](B).
[4] To be codified at 79 O.S. Supp. 1998, § 203[79-203](D)(1).
[5] To be codified at 79 O.S. Supp. 1998, § 203[79-203](D)(2).
[6] To be codified at 79 O.S. Supp. 1998, § 202[79-202](3).
[7] Although this section has been repealed, the Oklahoma Antitrust Reform Act includes an identical section to be codified at 79 O.S. Supp. 1998, § 203[79-203](A). 1998 Okla. Sess. Laws ch. 356, § 3(A).
[8] To be codified at 74 O.S. Supp. 1998, § 85.7[74-85.7](A)(1).